Burke, J. (dissenting).
In this case, here by permission of this court, the claimants, Diocese of Buffalo and St. Stanislaus, have been denied just compensation.
When the State takes land for a public purpose, the owner of the taken land is indeed entitled to be compensated for what he has actually lost in economic terms. The majority today concludes that an established cemetery which, as has been found by the trial court and the Appellate Division, is currently selling burial plots for over $130 each is entitled to be paid only about $5 each for those plots which it loses by reason of the taking. By applying the approach which this court has followed since our decision in the St. Agnes case (3 N Y 2d 37; see, also, Diocese of Buffalo v. State of New York, 18 N Y 2d 41; Mount Hope Cemetery Assn. v. State of New York, 11A D 2d 303, affd. 10 N Y 2d 752) the claimant would be entitled to be paid approximately $28 for each burial plot lost due to the taking. (The companion cases involve takings in which the comparative figures are equally striking: graves selling for about $140 each would be compensated at a mere $13 or $9 each.) This obvious disparity results from the majority’s incongruous application of inconsistent approaches to the question of valuation for a partial taking. The incongruity lies in the fact that the St. Agnes approach, as heretofore applied in this court in each case in which it was presented, attempted to take into account the unique fact that cemetery real property is sold, over the course of time, in fungible units and, therefore, the award should reflect a discount, designed to approximate *332 the effects of deferred realization of income, based upon past annual sales and sales prices. The Fourth Avenue approach relied upon by the majority is of course the traditional approach employed in the ordinary case of a partial taking. What the majority does is wed the usual with the unusual and produce by that union what can only be termed a bizzare offspring. The St. Agnes approach, in an attempt to arrive at a method of valuation which is fair to both condemnor and condemnee, seeks to approximate the economic effects of the taking by use of averages of past sales and sale prices but it does not in any way purport to produce a mathematically precise award for the very good reason that the very process of projecting the past into the future is itself imprecise (will the population served by the particular cemetery increase or decrease? will the death rate increase, decrease or remain fairly constant? will competition increase? will cremation replace burial? and, most importantly, will prices continue to increase at an annual rate of close to 4% as is shown by the evidence of one of the claimants?). In the face of this uncertainty, the approach adopted sought to balance the competing facets of these uncertainties by use of averages and a discount which would closely approximate the loss to the condemnee. That approach is now discarded without any discussion of the uncertainties which the discarded approach at least attempted to meet and deal with, and it does so by use of a method which, if used as the case relied upon by the majority used it, would result in an award in excess of $100,000 instead of the award of some $15,000 which results from the majority’s approach. For instance, the majority states that, because the burial plot units are fungible, there is no way of telling when any particular area would be used and that, therefore, the average discounted price used below would reflect the expected earnings from sales in the middle years of the cemetery’s life. The implication is that this results in an excessive award to the claimant. What the majority does not recognize is that, by its approach, it decides that the taken plots would necessarily he the last ones to he sold and, therefore, awards only the discounted value of the expected income flow for the last years of the cemetery’s life lost due to the taking. The approach heretofore followed recognized that it could not be determined whether the taken plots *333 would have been sold first, last or somewhere in between and, therefore, in fairness both to the State and to the claimant, chose the via media which, in effect, “ split the difference ” between the two extremes. Thus, at the same time that the majority deplores the idea of a “ windfall ” to the claimant by use of this average, it summarily and incongruously endorses a “ windfall ” for the State by use of its arbitrary determination that the taken plots should be considered as those which would necessarily be sold last. Even more incongruous is the majority’s conclusion that the cemetery land taken from the Buffalo Burial Park Association should not be valued as cemetery land because its owner would be ‘ ‘ better off ’ ’ using it for other purposes. The majority reaches this conclusion in spite of the elementary proposition that findings of fact affirmed by the Appellate Division are beyond review in this court if there is evidence to support them. (Cohen and Karger, Powers of the New York Court of Appeals, § 111; Matter of City of New York [Fifth Ave. Coach Lines], 22 N Y 2d 613, 620; Kingsland v. Erie County Agric. Soc., 298 N. Y. 409.) It appears that a useful life of some 88 years indicates as a matter of law that the highest and best use of the property is other than for cemetery purposes, whereas useful lives of some 55 and 42 years do not so indicate and this is asserted even in spite of the fact that both the claimant and the State tried the claim in the Court of Claims on the theory that the highest and best use was for cemetery purposes (an entirely reasonable theory in light of the fact that the property was concededly bought and held by the claimant for no other purpose but cemetery purposes). Needless to say, even motives of fairness (though not readily apparent in the dispositions as to the other two claimants) cannot serve to supply a justification for the majority’s abandoning its own newly announced method of determining damages for the partial taking of an established cemetery as to only one of the three claimants involved in the very opinion in which that new method is announced. The apparent generosity of the assertion that the other two claimants are also “ privileged ” to show a highest and best use other than for cemetery purposes could better be evaluated had the majority completed the parenthetical to read “ if they can ” (which they cannot). (Opn., p. 329, n. 4.) Throughout *334 the course of this litigation, the parties, including the State (until the cases reached this court), recognized that there was no doubt that the highest and best use of the property taken from each of the claimants was as cemetery property and no reason is now presented why any ‘1 privilege ’ ’ should be accorded to any of the claimants to assert otherwise upon a new trial. It can, however, be inferred that this meaningless gesture is due to a recognition that the awards which will result from a faithful application of the majority’s new “ rule ” will be shockingly less than “ just ” compensation. Suffice it to say that decisions affecting the justness of the compensation awarded to a property owner for property lost due to condemnation should be made on the basis of an analysis which is more thorough and perceptive than that employed by the majority in these companion cases and no better demonstration of that proposition could be found than is reflected in the wholly inadequate awards which will result upon the remission of the present claims to the Court of Claims. It is difficult to understand why Buffalo Burial Park Association is arbitrarily presented with the right to a new trial upon a theory first advanced by the State in this court, while the Diocese of Buffalo and St. Stanislaus are confined to the clearly inadequate compensation which will result from today’s decision. If the Diocese and St. Stanislaus were to be compensated according to the method set forth in the Fourth Avenue case, it is clear that the Diocese would be entitled to an award of approximately $455,000, whereas the majority’s approach would result in an award of $15,000 and the St. Agnes approach, prior to its strained merger with the ordinary before and after method, would result in an award of $100,000. Similarly, St. Stanislaus would be entitled to an award of some $1,747,000, whereas the majority’s approach results in an award of only $173,000 and the St. Agnes approach, prior to these cases, would result in an award of $495,000. In each case, the application of the Fourth Avenue rule is simple : find the present value of the whole prior to' the taking (multiply the number of grave sites prior to the taking by the average selling price which was found as a fact and affirmed by the Appellate Division) and, from that figure, subtract the value of the property remaining (multiply the number of grave *335 sites remaining by the average selling price). On the other hand, the discounting and averaging features in the St. Agnes case which take the place of the after value utilized in the Fourth Avenue case is equally simple while at the same time taking into account the deferred realization of income inherent in the cemetery’s operation. The majority, however, devises a combination of these two which inflates the discount (in effect, duplicating it by using the “ after ” value on top of it) so as to drastically reduce the awards below what are clearly levels which reflect just compensation for what has actually been taken. That the method devised is extreme is clear from a mere glance at the figures resulting from the application of each of the approaches and the inadequacy of the awards which will result from today’s decision amply demonstrates the soundness of the now-discarded St. Agnes approach. I would merely add that I agree that Buffalo Burial Park is entitled to compensation for the pine trees which it had planted for nursery purposes and which were lost by reason of the taking which is the subject of this litigation. Accordingly, I must dissent and vote to affirm the order of the Appellate Division in each case, except as modified with respect to Buffalo Burial Park’s claim for the trees.
In Diocese of Buffalo v. State:
Order reversed, without costs, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.
Judges Bergan, Beeitel and Jasen concur with Chief Judge Fuld; Judge Burke dissents and votes to affirm in an opinion in which Judges Scileppi and Keating concur.
In Buffalo Burial Park Association v. State:
Order reversed, without costs, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.
Judges Bergan, Beeitel and Jasen concur with Chief Judge Full; Judge Burke dissents and votes to modify in an opinion in which Judges Scileppi and Keating concur.
*336 In St. Stanislaus Roman Catholic Church Society v. State •.
Order reversed, without costs, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.
Judges Bbrgan, Breitel and Jasen concur with Chief Judge Fuld ; Judge Burke dissents and votes to affirm in an opinion in which Judges Scileppi and Keating concur.